J-S72002-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CAMERON RUSSELL, | |
| Appellant | No. 1193 WDA 2013 |

Appeal from the Judgment of Sentence Entered May 9, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0002325-2012

BEFORE:  BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED NOVEMBER 21, 2014**

Appellant, Cameron Russell, appeals from the judgment of sentence of an aggregate term of 54-108 months' incarceration and five years' probation, imposed following his conviction for burglary and related offenses. Appellant claims the trial court abused its discretion when it determined that the verdict was not against the weight of the evidence. After careful review, we affirm.

Appellant was charged by criminal information with the following offenses: robbery, 18 Pa.C.S. § 3701(a)(1)(ii); burglary, 18 Pa.C.S. § 3502(c)(1); receiving stolen property (RSP), 18 Pa.C.S. § 3925(a); theft by unlawful taking, 18 Pa.C.S. § 3921(a); terroristic threats, 18 Pa.C.S. §

_____

[*] Retired Senior Judge assigned to the Superior Court.

2706(a)(1); simple assault, 18 Pa.C.S. § 2701(a)(3); recklessly endangering another person (REAP), 18 Pa.C.S. § 2705; and conspiracy, 18 Pa.C.S. § 903(c). Appellant was found not guilty of conspiracy, but was convicted of all remaining counts, following a jury trial held on February 12-13, 2013. The trial court summarized the facts adduced at trial as follows:

On the evening of January 30, 2012, victim Rachel Wickline was at the home of her boyfriend, Parker Gresh, at 405 Gardner Street, McKees Rocks, while he was at work. As she sat on the couch, with the front door locked, she heard the door knob turning and saw two men enter the home. The intruder[s'] faces were partially covered with bandanas, and one of them had a gun. Ms. Wickline immediately recognized one of the intruders as [Appellant], Cameron Russell, but she did not recognize the other man, who was brandishing a weapon. The one intruder, whom she recognized as [Appellant] by his facial characteristics and voice, called her by name and threatened to pistol whip her. In fact, Ms. Wickline, during the course of the home invasion, even asked the second man, "Why is Cameron doing this?", and he replied, "You have to ask him." The co-[d]efendant in the case held a gun, which he pointed at her head, while [Appellant] kept yelling about, and searching for, a gun. The intruders left with an AR-15 Colt rifle and several magazine clips. According to Ms. Wickline, the entire encounter lasted fifteen (15) minutes. There was no sign of forced entry into the home.

Ms. Wickline had become acquainted with [Appellant] in the month or so prior to this incident. Approximately one (1) month prior to the robbery, Ms. Wickline was introduced to [Appellant] by his friend, Edward "EJ" Donnelly, a cousin of Mr. Parker Gresh, Ms. Wickline's boyfriend. Mr. Dannelly, Mr. Gresh, [Appellant], [Appellant]'s girlfriend, Nicole Newman, and the victim were sitting in the same room and playing videogames at Mr. Gresh's house. Mr. Donnelly introduced Ms. Wickline to [Appellant], referring to him as "Cameron." Ms. Wickline spoke with him briefly, hearing his voice. During this visit, Mr. Donnelly had retrieved an AR-15 Colt rifle owned by Mr. Gresh from Mr. Gresh's upstairs bedroom. Mr. Donnelly showed the rifle to [Appellant]. Mr. Gresh was not happy that Mr. Donnelly

- 2 -

was showing off his rifle, and he took the weapon back upstairs to his room.

Weeks later, and less than one (1) week before the robbery, [Appellant] and Ms. Newman were at Mr. Gresh's home a second time while Ms. Wickline was present. Ms. Newman and [Appellant] unexpectedly presented at Mr. Gresh's home one evening a few days before the robbery at issue. After the two (2) couples visited together for some time, Mr. Gresh offered to drive [Appellant] and his girlfriend home. They accepted the offer, and Ms. Wickline accompanied them on the drive. After returning home from the drive, Ms. Wickline noticed that her key to Mr. Gresh's house, which was located on a key ring placed on the nightstand next to the bed, was missing.

On January 30, 2012, immediately after the intruders left Mr. Gresh's home, Ms. Wickline called her boyfriend, Parker Gresh. During her conversation with Mr. Gresh, Ms. Wickline told him that "[Appellant] broke into the house." She further explained by saying, "There were two guys. [Appellant] was one of them. [Appellant] was here. And they broke in and they took your gun." As Ms. Wickline was too frantic to call 911, Mr. Gresh called 911 and told the operator that his home had been robbed, but he did not identify [Appellant] as one of the perpetrators. Mr. Gresh ran 2½ miles from his work back to his home, as he had left his vehicle with Ms. Wickline that night.

After this incident, Ms. Wickline went to a neighbor's home for safety. She was interviewed by police both the night of the incident and the following day. During her interviews, she identified one of her assailants as "Cameron[."] At that time, she did not know Cameron's [(Appellant's)] last name. Mr. Gresh called his cousin to obtain [Appellant]'s last name, and he was told that it was Russell. Ms. Wickline was shown a photo array by the McKees Rocks police and immediately identified [Appellant] as the person who had robbed her the day before. She described that it took her two (2) seconds to recognize [Appellant] in the photo array. She participated in a second photo array and identified the [c]o-[c]efendant, Rodney Grant, as the man who had held a gun to her head during the robbery.

[Appellant] was apprehended during a traffic stop in Franklin Park. The [c]o-[d]efendant, Rodney Grant, was driving the vehicle, and [Appellant] was a passenger. Mr. Grant consented voluntarily to a search of his vehicle at the time of the

traffic stop. The stolen Colt rifle was never recovered. However, when police executed a search warrant on the [c]o-[d]efendant's home, they recovered a Glock .40 caliber gun, which was similar to the one described by Ms. Wickline as being used by the second man when he held her at gun point. It should be noted that the [c]o-[d]efendant legally owned the registered handgun.

Trial Court Opinion (TCO), 7/17/14, at 2-5 (footnote and internal citations omitted).

The trial court sentenced Appellant on May 9, 2013, to 54-108 months' incarceration and a consecutive term of five years' probation for robbery, and no further penalty for burglary, RSP, theft by unlawful taking, terroristic threats, simple assault, and REAP. Appellant filed a timely post-sentence motion on May 16, 2013, alleging that the verdict was against the weight of the evidence. The post-sentence motion was denied by the trial court on June 25, 2013.

On July 25, 2013, Appellant filed a timely notice of appeal. On July 31, 2013, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant filed a timely request for extension of time on August 30, 2013, which was granted by the trial court on September 6, 2013. Appellant then filed a timely Rule 1925(b) statement on September 25, 2013, and the trial court issued its Rule 1925(a) opinion on July 17, 2014.

Appellant now presents the following question for our review: "For a variety of reasons, were the guilty verdicts in this case contrary to the weight of the evidence and, thus, must a new trial be awarded so that

justice may have another opportunity to prevail?" Appellant's Brief at 6 (unnecessary capitalization omitted).

We review Appellant's weight-of-the-evidence claim under the following standard:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

***Commonwealth v. Widmer***, 744 A.2d 745, 751-52 (Pa. 2000) (internal citations omitted).

Appellant argues that the victim recognized his voice, and not his face, during the burglary. Yet, the victim identified Appellant from a photo array rather than from a voice line-up. Additionally, Appellant contends:

> A voice line-up is only one of several important pieces of evidence missing from the case. In addition, there was no physical forensic evidence such as fingerprints, fiber traces, or DNA found that connected Mr. Russell to the crime scene. The stolen gun was not found in Mr. Russell's possession, and was in fact never found. If a search was conducted of Mr. Russell's home to look for the stolen weapon or the clothing that Ms. Wickline described as being worn by her attackers, there was no

testimony about it. The Commonwealth did not produce the masks or hoodies that were allegedly worn on that night. The sole evidence linking Mr. Russell to the crime was this alleged voice identification which was never challenged by the investigating officers.

Appellant's Brief at 14. Appellant also notes that his co-defendant was acquitted on all charges despite having also been identified by the victim from a photo array. Appellant contends that the jury's "verdict simply doesn't make sense in this context." *Id.* at 15.[1]

In rejecting Appellant's weight-of-the-evidence claim, the trial court acknowledged the lack of physical evidence in this case, but determined that the victim's identification of Appellant was credible enough to justify Appellant's conviction. The court stated:

Ms. Wickline testified credibly that she had met and spent time with [Appellant] on two (2) prior occasions. She further credibly testified that she immediately recognized [Appellant] as one of the intruders in Mr. Gresh's home. She stated that she recognized [Appellant] by his voice, eyes, face and build. She provided his name to the police as one of the intruders and immediately identified him in a photo array. Additionally, [Appellant] called Ms. Wickline by her first name, and when she asked the second intruder "why Cameron was doing this[,"] he did not correct her, but instead said she'd have to ask him.

TCO at 6.

We note that although Appellant suggests that his voice was the sole basis for the victim's identifying him, the trial court indicates that the victim

_____

[1] Although jointly tried, Appellant and his co-defendant had different factfinders. Appellant was tried by a jury, whereas his co-defendant elected for a non-jury trial.

also recognized some of Appellant's physical features. Furthermore, circumstantial evidence supported the victim's identification of Appellant: The victim interacted with Appellant on two occasions prior to the burglary/robbery, Appellant used the victim's first name during the crime, and Appellant's cohort unwittingly revealed that the victim correctly identified Appellant's name as being "Cameron" when the victim asked him why Appellant was "doing this." *Id.* The trial court also notes that "[d]espite a thorough and lengthy cross-examination by [two defense attorneys], Ms. Wickline never waivered [sic] in her identification of [Appellant] as one of the intruders…." *Id.* at 8. Given these facts, we agree with the trial court that the dearth of physical evidence in this case did not greatly outweigh the strength of the victim's identification of Appellant.

Moreover, we disagree with Appellant's contention that the trial court's acquittal of his co-defendant suggests that the jury's verdict "doesn't make sense…." Appellant's Brief at 15. Generally speaking, it is not at all shocking, or even unusual, when the identification testimony regarding different co-defendants differs in quality. Here, the victim's familiarity with Appellant provided greater reliability to her identification of him because she recognized his voice and some of his physical feature from their previous interactions. However, the victim had no such familiarity with Appellant's co-defendant, and Appellant's co-defendant had four alibi witnesses who, the trial court indicates, "testified credibly and consistently" that the co-defendant could not have assisted Appellant on the night of the robbery.

TCO at 9. The trial court also described the alibi witnesses' testimony as "compelling." *Id.* Given these circumstances, we do not ascertain an abuse of discretion in the trial court's rejecting Appellant's weight-of-the-evidence claim.

Judgment of sentence *affirmed*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/21/2014